USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/18/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MEGAN E. FAY,

                  Plaintiff,

-against-

MARY BARBERA, THEODORE BROVARSKI, and COUNTY OF ROCKLAND,

                  Defendants.

23-cv-8455 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Megan E. Fay ("Fay" or "Plaintiff") initiated this action on September 26, 2023 (ECF No. 1), alleging deprivation of rights under 42 U.S.C. § 1983 ("Section 1983") claiming Fourteenth Amendment equal protection violations against, against Defendant Mary Barbera ("Barbera"), Theodore Brovarski ("Brovarski") and the County of Rockland ("Rockland") (together, "Defendants").

    Presently before the Court is Defendants' Motion to Dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") and to stay discovery pursuant to Federal Rules of Civil Procedure 26(c) ("Rule 26(c)"). For the following reasons, Defendants' Motion to Dismiss is GRANTED.

## BACKGROUND

    The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

    Plaintiff Megan E. Fay is a female of legal majority. (Compl. ¶ 1.) Plaintiff took a written civil service examination for the title of police/patrol officer in Fall of 2016. (Compl. ¶ 7.) Plaintiff took and passed the physical examination required for becoming a police officer in July of 2017.

1

(Compl. ¶ 9.) In February 2018, Plaintiff began at the police academy, where she excelled and won honors for her performance. (Compl. ¶ 10.) In October 2018, Plaintiff was hired as a transport officer under the Rockland County's Sheriff's Department ("Sheriff's Department"). (Compl. ¶ 11.) Plaintiff worked on weekdays and weekends from 8 AM to 4 PM and was one of few women employed. (Compl. ¶ 12.) Plaintiff remained on the civil service list for appointment to the title of patrol officer. (Compl. ¶ 13.) In July 2019, Plaintiff received a letter regarding whether she was interested in the position of patrol officer. (Compl. ¶ 15.) Plaintiff confirmed her interest and was interviewed for the position but ultimately not elevated. (Compl. ¶¶ 15-16.) Plaintiff later learned in Spring of 2020 that the Sheriff's Department disqualified her from appointment to patrol officer because she supposedly provided an incorrect residency address. (Compl. ¶ 17.) Plaintiff otherwise received no notice that she had been disqualified as a potential candidate for patrol officer. (Compl. ¶ 18.) Plaintiff then reached out to Mary Barbera, the Sheriff's Department Undersheriff, to clarify her residency, after which Plaintiff was reinstated to the civil service list. (Compl. ¶¶ 19-20.)

In March 2021, Plaintiff attained the highest score on the civil service examination for the position of patrol officer. (Compl. ¶¶ 21-22.) Plaintiff thereafter expressed her interest in the position of patrol officer. (Compl. ¶ 23.) Plaintiff was not given an interview despite her interest. (Compl. ¶ 24.) In Summer of 2021, after other candidates were selected from the civil servant list, Sergeant Matt Meyers and Chief Barbera, husband of Barbera, expressed their concern to Plaintiff that Plaintiff had not been appointed to patrol officer. (Compl. ¶¶ 25-26.) Sergeant Meyers told Plaintiff that Barbera does not appoint women to patrol officer, in particular ones who looked like the Plaintiff, and that Plaintiff was too pretty to be appointed to the position. (Compl. ¶ 27.) Thereafter, Chief Barbera told Plaintiff that Barbera does not appoint women to patrol officer, and similarly stated that Plaintiff was "too pretty" to be appointed. (Compl. ¶ 28.) In March 2022,

Plaintiff was denied appointment to the position of deputy sheriff in the division which Barbera also administered. (Compl. ¶ 29.) After learning of this rejection, Plaintiff called Barbera to ask why she was not interviewed and how she could better position herself to be promoted. (Compl. ¶ 30.) Barbera simply stated that she did not have to interview the Plaintiff and that she had selected an internal candidate for the promotion. (Compl. ¶ 31.) The candidate was a male who had been assigned to, but was inactive in, the transport unit. (Compl. ¶ 32.) The Plaintiff stated that she, too, was an internal candidate since she had worked for the Sheriff's Department for several years, and that she received excellent reviews for her work as a transport officer. (Compl. ¶ 33.) Barbera provided no substantive response. (Compl. ¶ 34.) Plaintiff alleges she was better qualified than the male candidate and that Barbera's promoting the male candidate was intentional gender-based discrimination. (Compl. ¶ 35.)

During Summer of 2023, Plaintiff accepted the position of full-time code enforcement officer with the Town of Clarkstown. (Compl. ¶ 37.) Plaintiff sought to continue working with the Sheriff's Department, specifically the weekend transport schedule. (Compl. ¶ 39.) Plaintiff's superiors supported her request to work only weekend shifts. (Compl. ¶ 41.) However, after Plaintiff requested leave from Chief Theodore Brovarski to continue on the weekend transport schedule, Brovarski stated Plaintiff would not be allowed to do so unless she committed to working four shifts per pay period. (Compl. ¶ 43.) If Plaintiff did not do so, she would be required to resign. (Compl. ¶ 44.) Before then, the Sheriff's Department did not have such a policy in place. (Compl. ¶ 45.) There was at least one similarly situated male who was permitted to take only weekend shifts at the Sheriff's Department as a transport officer. (Compl. 46.) The requirement contravened long-standing department practice that allowed transport officers to remain part of the unit, even when they did not work for months in the unit. (Compl. ¶ 47.) Brovarski did not allow Plaintiff to seek

coverage for shifts assigned to her during the week, which was common practice in the transport unit when an officer could not cover their assigned shift. (Compl. ¶ 48.) Rather, Brovarski demanded Plaintiff work weekday shifts during her scheduled hours with the Town of Clarkston, a policy that did not exist previously. (Compl. ¶¶ 48, 49.) Plaintiff advised her supervisors that she could not adhere to this requirement. (Compl. ¶ 49.) Afterwards, Plaintiff's supervisor advised her that if she did not comply with this policy, she would need to resign. (Compl. ¶ 51.) Plaintiff has refused to resign and continues to request weekend assignments only, which Plaintiff asserts other transport officers have been permitted to do. (Compl. ¶ 52.)

Based on the foregoing, Plaintiff brings Section 1983 claims alleging violation of the Fourteenth Amendment.

## PROCEDURAL HISTORY

On September 26, 2023, Plaintiff commenced this action against Defendant in his complaint (the "Complaint", ECF No. 1). Defendant filed a motion to dismiss and their memorandum of law in support (the "Motion" or "Mot.", ECF No. 27). Plaintiff filed an opposition to the Motion ("the Opposition" or "Opp.", ECF No. 29). The Defendant filed a reply affirmation in further support of the Motion (the "Reply", ECF No. 28).

## LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement

to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B. Rule 26(c)**

Rule 26(c) allows a party to move for a protective order to stay discovery. Fed. R. Civ. P. 26(c). Upon showing of good cause, a court may issue the protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* "A pending motion to dismiss may constitute 'good cause' for a protective order staying discovery." *Allah v. Latona*, 522 F. Supp. 3d 1, 2 (W.D.N.Y. 2021) (*quoting Hong Leong Fin. Ltd. (Sing.) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013).

**C. Section 1983**

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities

5

secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege " (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998); Quinn v. Nassau Cty. Police Dep't, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 " furnishes a cause of action for the violation of federal rights created by the Constitution." ).

## DISCUSSION

Plaintiff brings claims pursuant to § 1983, alleging Fourteenth Amendment violations. Plaintiff's § 1983 claims must be dismissed.

### A. County of Rockland - Municipal Liability

In order to "establish the liability of a municipality under § 1983 for unconstitutional acts by its employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy." *Powell v. Gardner*, 891 F.2d 1039, 1045 (2d Cir. 1989). A "properly pled Monell claim establishes a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Barrett v. City of Newburgh*, 720 F. App'x 29, 31 (2d Cir. 2017)

6

(quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "[O]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A plaintiff must "allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Isaac v. City of New York*, 17 Civ. 1021 (PGG), 2018 WL 1322196, *6 (S.D.N.Y. March 13, 2018) (quotations and citations omitted). Otherwise, "Congress did not intend municipalities to be held liable [under Section 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Srvs. of the City of N.Y.*, 436 U.S. 658, 691 (1978).

Here, Plaintiff does not allege a custom or policy which deprived her of a constitutional right. *See Salvatierra v. Connolly,* No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing claim against municipal agencies where plaintiff did not allege that any policy or custom caused the deprivation of his rights). Specifically, the Complaint does not allege a custom or policy of gender-based discrimination in the Sheriff's Department. Rather, the Complaint only states instances in which the Plaintiff was not promoted, for instance, "in late summer 2021" that "appointments were made from [the civil servant] list" and that "others were selected from the [civil servant] list." (Compl. ¶¶ 24-25.) Notably, Plaintiff does not allege that women were not selected, only vaguely stating "others" were promoted without specifying gender. (*Id.*) Plaintiff also references not being promoted to Deputy Sheriff, noting the promoted candidate was "male" who "had previously been assigned to, but been inactive in, the transport unit." (Compl. ¶ 32.) These allegations only demonstrate that Plaintiff was not selected and that, at times, male candidates were promoted when she was not. (*Id.*) Finally, Plaintiff cites to Brovarski's imposing a policy requiring Plaintiff to sign up for more shifts than other employees were required

7

to. However, according to Plaintiff, this practice was in direct contravention of long-standing department policy. (Compl. ¶ 47.) Thus, Brovarski's conduct cannot be tantamount to a municipal policy when the actual policy of the municipality stood in contrast to the requirements Brovarski imposed.

Without more, Plaintiff has not "adduce[d] any evidence [or asserted facts] demonstrating that gender played a role in [these] decision[s]." *Melendez v. Cnty. of Westchester*, No. 17-CV-9637 (NSR), 2021 WL 467085 (S.D.N.Y. Feb. 8, 2021). These are "isolated acts ... by non-policymaking municipal employees [which] are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Accordingly, the Court finds that Plaintiff has failed to state a plausible § 1983 claim against the County of Rockland and dismisses the claim without prejudice.

**B. Section 1983 claims against Defendant Barbera and Defendant Brovarski**

In order for a defendant in a Section 1983 action to be held liable, the plaintiff must demonstrate the defendant was personally involved in the alleged constitutional violations. *Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000). Personal involvement is defined as "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Important context is that a defendant "in a § 1983 action is not liable simply on the basis of holding a high position of authority." *Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 196 (S.D.N.Y. 2004). Additionally, "[p]leadings pursuant to § 1983 must contain 'more than mere conclusory allegations.'" *Richard v. Fischer*, 38 F. Supp. 3d 340, 351 (W.D.N.Y. 2014) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988)).

As to Barbera, the record is void of facts alleging that Barbera discriminated against Plaintiff on the basis of gender. Plaintiff only reaches this conclusion through comments made by other employees about Barbera (*see* Compl. ¶¶ 27, 28), and because Barbera elevated a male candidate to the position Plaintiff was vying for. (Compl. ¶ 32.) The Plaintiff asserts that she was "better qualified for this appointment than the male appointed" but does not offer factual allegations as to how this is the case. (Compl. ¶ 35.) Moreover, Plaintiff does not allege that Barbera did not appoint women to this position previously. (*Id*.) Without more, the Court cannot find that Barbera did not promote Plaintiff on the basis of her gender and consequently, Plaintiff's Section 1983 claim against Barbera must be dismissed without prejudice.

Lastly, as to Brovarski, Plaintiff has not demonstrated that gender played a role in Brovarski's decision to impose allegedly disparately shift requirements. *Melendez*, 2021 WL 467085. Plaintiff only alleges that Brovarski required Plaintiff to work four shifts per pay period so she could continue to be employed by the Sheriff's Department while working for the Town of Clarkstown simultaneously. (Compl. ¶¶ 43-46.) While the Complaint does allege that Brovaski only applied this requirement to Plaintiff, implicit in this allegation is that other women in the department were not subject to this policy in the way Plaintiff was. Indeed, where Plaintiff states that this policy was not apply to a "similarly situated male," Plaintiff does not also allege that other women were disparately subject to this requirement. (Compl. ¶¶ 46-47.) Thus, the application of said shift policy cannot be attributed to discrimination on the basis of gender at this time. Therefore, Plaintiff's § 1983 claim against Brovarski must be dismissed without prejudice.

It might be that Plaintiff can amend her Complaint to demonstrate that Barbera and Brovarski were making disparate decisions against Plaintiff on the basis of her gender, but as

9

currently pled, the Complaint does not make a plausible § 1983 claim against Barbera and Brovarski.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' motion to dismiss Plaintiff's Section 1983 claim without prejudice. Plaintiff is granted leave to file an Amended Complaint by November 22, 2024. Plaintiff is advised that the Amended Complaint will replace, not supplement, the Complaint, and so any claims that she wishes to pursue must be included in, or attached to, the Amended Complaint. Should Plaintiff file an Amended Complaint, the Defendants are directed to answer or otherwise respond by December 20, 2024 and the parties are directed to complete and file a Case Management Plan and Scheduling Order (blank form attached) by January 10, 2025. If Plaintiff fails to file an Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

That portion of Defendants' motion seeking to stay discovery is denied as moot.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 27.

Dated:   October 18, 2024                                SO ORDERED:
         White Plains, New York

                                                         _____
                                                         NELSON S. ROMÁN
                                                         United States District Judge

UNITED STATES DISTRICT COURT  Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

                         Plaintiff(s),      **CIVIL CASE DISCOVERY PLAN**

                                                       **AND SCHEDULING ORDER**

- against -

                           Defendant(s).     _____ CV _____ (NSR)

---------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY _____.**

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.


Dated: White Plains, New York

_____

_____

Nelson S. Román, U.S. District Judge